UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EAD Group LLC,<br><br>                         Plaintiff,<br><br>              v.<br><br>Bulent Toros, et al.,<br><br>                         Defendants. | 25 Civ. 8083 (DEH)<br><br>**OPINION<br>AND ORDER** |

DALE E. HO, United States District Judge:

Before the Court are Defendant Bulent Toros's Motion for Anti-Suit Injunction, ECF No.

68, and Motion to Seal, ECF No. 71.  For the reasons set forth below, the Motions are **DENIED**.

**BACKGROUND**

The Court assumes familiarity with the background facts of this case, which will be

discussed more fully in adjudication of the pending Motions to Dismiss, ECF Nos. 61, 62, and

Motion to Compel Arbitration, ECF No. 59.  As relevant here, Plaintiff EAD Group LLC sued

Defendants Bulent Toros, UBS Group AG, Egemen Başar, Credit Suisse Securities (USA) LLC,

İş Yatirim Menkul Değerler A.S., and Yasemin Toros in this Court on September 30, 2025.

Compl. at 6-7, ECF No. 1.  Plaintiff alleges that Defendants wrongfully liquidated shares in Aeva

Technologies, Inc., and seeks damages, including compensatory and punitive damages from

Defendants.  *Id.* at 50-51.  Prior to filing this case, Plaintiff brought an arbitral action in June 2025

against W Management Services Ltd. ("WMS") and SRT Capital SPC, Ltd. ("SRT"), signatories

of the Margin Lending Agreement governing the original transfer of shares at issue.  Compl. ¶ 91.

Plaintiff has also filed four suits against Defendants in other jurisdictions: the Cayman

Islands, Switzerland, the United Kingdom, and the British Virgin Islands.  ECF No. 68 at 6-9; ECF

73 at 1.  Furthermore, Plaintiff has filed an application for discovery from financial institutions in

the Southern District of New York pursuant to 28 U.S.C. § 1782 for use in the Swiss proceeding, currently pending before this Court. *In re EAD Group LLC*, 25-mc-00536 (S.D.N.Y. filed Nov. 26, 2025). Also currently pending before this Court is Toros's Motion to Compel Arbitration of the claims in this case. ECF No. 59.

Defendant Bulent Toros has moved to enjoin Plaintiff from pursuing parallel litigation in foreign jurisdictions. Mot. for Anti-Suit Injunction, ECF No. 68 ("Motion"). Also pending before the Court is Toros's Motion to Seal documents in connection with his Motion for Anti-Suit Injunction. ECF No. 71.

## LEGAL STANDARDS

### I. Anti-Suit Injunctions

Although "[t]he power of federal courts to enjoin foreign suits by person subject to their jurisdiction is well-established," injunctions against foreign suits should be "used sparingly" and "should be granted only with care and great restraint."[1] *China Trade & Dev. Corp. v. M.V. Choong Yong*, 837 F.2d 33, 35-36 (2d Cir. 1987) (internal quotations omitted). A Court may impose an anti-suit injunction only if (1) "the parties are the same in both matters," and (2) "resolution of the case before the enjoining court is dispositive of the action to be enjoined." *Paramedics Electromedicina Comercial, Ltda v. GE Medical Systems Information Technologies, Inc.*, 369 F.3d 645, 652 (2d Cir. 2004) (citing *China Trade & Dev. Corp.*, 837 F.2d at 35). If the threshold factors are met, the court must also consider additional factors, including "whether the parallel litigation would: (1) frustrate a policy in the enjoining forum, (2) be vexatious, (3) threaten the issuing court's in rem or quasi in rem jurisdiction, (4) prejudice other equitable considerations, or (5) result

---

[1] All references to Rules are to the Federal Rules of Civil Procedure. In all quotations from cases, the Court omits citations, alterations, emphases, internal quotation marks, and ellipses, unless otherwise indicated.

in delay, inconvenience, expense, inconsistency, or a race to judgment." *WTA Tour, Inc. v. Super Slam Ltd.*, 339 F. Supp. 3d 390, 403 (S.D.N.Y. 2018) (citing *Keep on Kicking Music, Ltd. v. Hibbert*, 268 F. Supp. 3d 585, 590 (S.D.N.Y. 2017)).

**II.     Sealing of Documents**

The Court applies a three-part inquiry to determine whether to seal a document. *See Olson v. Major League Baseball*, 29 F.4th 59, 87-88 (2d Cir. 2022). First, a court determines whether a document is a "judicial document," subject to a presumptive public right of access. *See id.* at 87. A judicial document is "a filed item that is relevant to the performance of the judicial function and useful in the judicial process." *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 139 (2d Cir. 2016).

Second, a court determines the weight of the presumption that attaches to the document, looking to "the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Olson*, 29 F.4th at 87-88. "The presumption of public access exists along a continuum. The strongest presumption attaches where the documents determine litigants' substantive rights, and is weaker where the documents play only a negligible role in the performance of Article III duties." *Id.* at 89 (internal quotations omitted). However, documents do not "receive different weights of presumption based on the extent to which they [are] relied upon in resolving the motion." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 123 (2d Cir. 2006).

"Finally, once the weight of the presumption has been assessed, the court is required to balance competing considerations against it." *Olson*, 29 F.4th at 88. "[C]ontinued sealing of the documents may be justified only with specific, on-the-record findings that sealing is necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim." *Lugosch*, 435 F.3d at 124. Competing considerations may include the protection of "sensitive

business information," the release of which could cause a litigant "competitive harm." *Toretto v. Donnelley Fin. Sols., Inc.*, 583 F. Supp. 3d 570, 608 (S.D.N.Y. 2022). "A further countervailing consideration is the privacy interests of innocent third parties which should weigh heavily in a court's balancing equation." *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. 14 Misc. 2542, 2023 WL 196134, at *4 (S.D.N.Y. Jan. 17, 2023) (citing *Application of Newsday, Inc.*, 895 F.2d 74, 79-80 (2d Cir. 1990)), *reconsideration denied*, 2023 WL 3966703 (S.D.N.Y. June 13, 2023). The court may deny public disclosure of the record only "if the factors counseling against public access outweigh the presumption of access afforded to that record." *Olson*, 29 F.4th at 88.

## DISCUSSION

### I.    Motion for Anti-Suit Injunction

The parties disagree whether the first *China Trade* factor is met, at least as to the UK, Cayman Islands, and British Virgin Islands actions. Plaintiff argues that the same party factor is not met because its foreign suits seek relief against additional entities. ECF No. 69 at 10-12 (UK action names T London and Cayman Islands action names Pembroke Ventures, both non-parties to this litigation); *see also* ECF No. 72 ("Trujillo Decl."), Ex. E (British Virgin Islands action names Pembroke Ventures as a Defendant). Toros argues that the first factor is met, as all Defendants in the international actions are the same real parties in interest, because insofar as Plaintiff includes additional entities in those actions, it is due to their association with Toros. Motion at 11-12; *see WTA Tour*, 339 F. Supp. 3d at 403 ("To qualify for an anti-suit injunction, the parties need not be exactly identical; it is enough if they are substantially similar."). The Court need not consider these arguments, because Toros fails to demonstrate the second *China Trade* factor.

Toros argues that resolution of this case would be dispositive of the foreign actions "because a ruling in this Court that EAD is required to arbitrate its claims will dispose of all the Foreign Actions." Motion at 13. The Court disagrees.

Each of Plaintiff's foreign actions seeks interim or conservatory relief against the dissipation of assets. ECF No. 69 at 13; *see* Trujillo Decl. Exs. A, C, D, E. Even where an enforceable agreement commits disputes arising from the agreement to arbitration, the ICC rules— which were incorporated in the Margin Lending Agreement at issue in this case, Compl. Ex. A at 14—provide that in appropriate circumstances, parties may seek interim or conservatory relief from any competent judicial authority. *See Faively Trans. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 116 (2d Cir. 2009); *see also In re Faively Transport Malmo AB*, 522 F. Supp. 2d 639, 641 (S.D.N.Y. 2007) (determining that an enforceable arbitration agreement did not preclude the availability of interim or conservatory injunctive relief to preserve the status quo pending arbitration). Accordingly, even if this Court were to grant the pending Motion to Compel Arbitration, such a decision would not dispose of the foreign actions, which only serve to preserve the status quo and do not seek relief for the claims asserted here or in arbitration.

Technically speaking, a final resolution of the claims at issue in this case might in some sense dispose of the foreign actions, at least insofar as those actions seek to preserve assets pending the outcome of this litigation or potential arbitration. However, the second *China Trade* factor is met when the merits of the claims at issue in the enjoining court—or an arbitral tribunal if those claims are potentially subject to arbitration—are sufficiently coextensive with those at issue in the court to be enjoined such that allowing the latter to proceed risks creating a conflicting result. *See Paramedics Electromedicina Comercial, Ltda*, 369 F.3d at 653-54 (Anti-suit injunction appropriate where plaintiff had asked both the enjoining court and foreign court to decide issue of whether arbitration clause applied to underlying claims); *see also Ibeto Petrochemical Indus. Ltd.*

5

*v. M/T Beffen*, 475 F.3d 56, 60-61, 64-65 (2d Cir. 2007) (Anti-suit injunction appropriate where plaintiff sought to pursue the same merits of their maritime claims in both foreign and domestic courts).  There is no such issue here.  And there is no concern of foreign proceedings frustrating "the general federal policy of favoring arbitration" here, because Plaintiff's applications for interim or conservatory relief in foreign courts do not seek relief on the underlying claims.  *See id.* at 64-65.

Toros has not demonstrated that the second threshold *China Trade* factor is met here.  Accordingly, the Motion for Anti-Suit Injunction is **DENIED**.

## II.    Motion to Seal

Toros has also moved to seal documents filed in support of his Motion for Anti-Suit Injunction.  ECF No. 71.  He seeks to file a redacted version of the Declaration filed in support of his Motion, ECF No. 72, and each of the Declaration's five exhibits.  In his letter motion, Toros notes that Plaintiff consents to the request to seal.  ECF No. 71.

Here, there is no doubt that the declaration and exhibits at issue, which were submitted in support of Toros's motion for an anti-suit injunction, are judicial documents "relevant to the performance of the judicial function and useful in the judicial process." *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995).  Thus, the presumption of public access attaches to all the documents discussed herein.  *Lugosch*, 435 F.3d at 123.

Because "the judicial authority invoked by some non-dispositive motions is ancillary to the court's core role in adjudicating a case, the presumption of public access accorded to such motions is generally somewhat lower than the presumption applied to material introduced at trial, or in connection with dispositive motions." *Giuffre v. Maxwell*, 146 F.4th 165, 177-78 (2d Cir. 2025) (internal quotations omitted).  Therefore, because the Motion for Anti-Suit Injunction is not dispositive of this case, the documents Toros seeks to seal enjoy a somewhat lower presumption

6

of public access.  However, a proponent of sealing documents in connection with non-dispositive motions "must still articulate specific and substantial reasons for sealing such material." *Id.* at 178 (citing *Brown v. Maxwell*, 929 F.3d 41, 50 (2d Cir. 2019).  "Broad and general findings and conclusory assertions are insufficient . . . specific, on-the-record findings are required" to justify sealing.  *Bernstein*, 814 F.3d at 144-45.

The Court's decision here therefore turns on the third *Olson* step—that is, whether higher values justify continued sealing and if the proposed sealing or redactions are sufficiently narrowly tailored to protect those values.  Toros's primary argument is that the documents—which are references to or complaints brought by Plaintiff against Toros and others in foreign courts—contain "allegations" the public disclosure of which "risks unfair prejudice, reputational and financial harm, and confusion in parallel proceedings."  ECF No. 71 at 1-2.  Toros also argues that the five exhibits "are currently under seal in the Foreign Actions," and that "international comity" therefore counsels their sealing here.  *Id.* at 2.

Toros has "not proffered any meaningful harm that would result from the public disclosure" of these particular documents. *Optionality Consulting PTE. LTD. v. Edge Tech. Grp. LLC*, No. 18 Civ. 5393, 2024 WL 1464660, at *2 (S.D.N.Y. Apr. 4, 2024).  That is, other than conclusory assertions, Toros has not adequately articulated how disclosure of these documents may cause him "reputational and financial harm" or cause "confusion in parallel proceedings."  Nor has Toros proffered any specific, on-the-record submissions to substantiate the assertion that the five exhibits are sealed in foreign courts.  On the latter front, the Court need not reach Toros's argument of international comity, because "even if [foreign] law . . . would require sealing, considerations of international comity do not . . . override the strong presumption in favor of public access to judicial documents." *Redeemer Comm. of Highland Credit Strategies Funds v. Highland Cap. Mgmt., LP*, 182 F. Supp. 3d 128, 130 (S.D.N.Y. 2016).

Finally, even if Toros had done more to justify his request, he has failed to show that wholesale sealing of the exhibits and their references in the proffered declaration, rather than narrowly tailored redactions, would be appropriate. The request is not tailored at all, let alone narrowly tailored to protect the interests invoked here. *See Lugosch*, 435 F.3d at 126. Accordingly, the request to seal ECF No. 72 and its accompanying exhibits (ECF Nos. 72-1, 72-2, 72-3, 72-4, and 72-5) is **DENIED WITHOUT PREJUDICE**.

## CONCLUSION

For the aforementioned reasons, the Motion for Anti-Suit Injunction is **DENIED** without prejudice as to renewal.

The Motion to Seal is also **DENIED** without prejudice as to renewal. The following documents shall remain temporarily under seal for fourteen (14) days: ECF Nos. 72; 72-1; 72-2; 72-3; 72-4; 72-5. On or before the expiration of that period, any party wishing to keep some or all of these documents sealed may file a renewed motion to seal. To the extent that such a motion seeks to propose redactions to, rather than to wholly seal, a document, it shall be accompanied by redacted versions of such documents.

- If a renewed sealing motion is filed, the Court will maintain any documents subject to such request under temporary seal pending adjudication of the motion.

- Any documents not subject to a timely renewed sealing request will be unsealed upon expiration of the fourteen-day period.

The Clerk of Court is respectfully requested to terminate ECF Nos. 68 and 71.

SO ORDERED.

Dated: February 6, 2026

New York, New York

_____
DALE E. HO
United States District Judge

9